IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:17mj1945(SALM) |
| v. | FILED UNDER SEAL |
| SIDIKJON MAMADJONOV | December 21, 2017 |

## AFFIDAVIT IN SUPPORT OF A COMPLAINT AND ARREST WARRANT

I, Christopher Evans, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent employed by the Department of Homeland Security (DHS) /Immigration and Customs Enforcement ("ICE)/Homeland Security Investigations ("HSI") and have been so employed since August 2008. Since January 2015, I have been assigned to the Federal Bureau of Investigation's ("FBI") Joint Terrorism Task Force ("JTTF"). Prior to this, I was assigned to HSI Springfield, MA upon completion of the Federal Law Enforcement Training Center in Glynco, Georgia. Before joining HSI, I served as a Naval Officer in the United States Navy since March 1999. As a Special Agent with HSI, I have been involved in many investigations involving national security, including leading such investigations, applying for and executing search warrants, interviewing victims, interviewing suspects, and conducting arrests. I have gained experience through training in seminars, classes, and everyday work related to conducting these types of investigations. I have also conducted complex financial investigations and the debriefing of informants, cooperating witnesses, and defendants.

2.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to

conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am involved in the investigation which is the subject of this affidavit and have personally participated in the investigation concerning the violation of the federal law listed in this affidavit.

3. As a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents of the FBI and other law enforcement personnel; (3) information provided by witnesses and other sources of information, to include statements of the defendant; (4) records and documents obtained during the course of the investigation; and (5) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.

4. Based upon the facts set forth below, and as a result of my personal participation in this investigation, I submit that there exists probable cause to believe, and I do believe, that SIDIKJON MAMADJONOV has committed a violation of Title 18, United States Code, Section 1425, (Procurement of Naturalization Unlawfully) and Title 18, United States Code, Section 1015, (False Statements on a Naturalization Application); and Title 18, United States Code, Section 1546 (False Oath or Declaration Under Penalty of Perjury).

5. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact regarding this

investigation. Rather, I have set forth only the facts necessary to establish probable cause to believe that MAMADJONOV has violated Title 18, United States Code, Section 1425, Title 18, United States Code, Section 1015, and Title 18, United States Code, Section 1546.

**THE DEFENDANT**

6.  SIDIKJON MAMADJONOV was born in Tashkent, Uzbekistan on August 4, 1986. MAMADJONOV immigrated to the United States and, on September 27, 2010, became a Lawful Permanent Resident (LPR). MAMADJONOV currently resides with his family in Connecticut.

**PROBABLE CAUSE**

*I.   Summary of the Investigation*

7.  Your affiant has personally reviewed Alien File (A-file) #088-680-958, maintained by the United States Citizenship and Immigration Services (USCIS) in the name of SIDIKJON MAMADJONOV, containing the alien's biographical information, records of encounters with USCIS, U.S. Immigration and Customs Enforcement, photographs and fingerprints. Based on a review of the A-File and interview, the defendant, SIDIKJON MAMADJONOV, is the alien referenced therein and is a citizen and national of Uzbekistan (born in Tashkent, Uzbekistan).

8.  MAMADJONOV entered the United States in an immigrant status at the John F. Kennedy International (JFK), Port of Entry (POE), on or about February 15, 2009. On September 27, 2010, MAMADJANOV's adjustment of status application was approved granting him Lawful Permanent Resident (LPR) status. MAMADJONOV was authorized to remain in the United States

indefinitely, providing that he did not fall into one or more categories of deportable offenses as defined in Title 8, United States Code, Section 1227. Evidence of this entry was found in a search of the DHS databases, as well as the copy of MAMADJONOV's Transportation Letter (A088680955) maintained in his A-File.

9. Further review of MAMADJONOV's A-File, and the evidence set forth in this Affidavit hereafter, reflect the following:

    A. On or about September 8, 2014, MAMADJONOV completed the questions on the Application for Naturalization, Form N-400. MAMADJONOV signed the application in Part 12 section certifying that under penalty of perjury, the application, and evidence submitted with it, were all true and correct. The Application for Naturalization, Form N-400, was stamped as received by USCIS on October 17, 2014.

    B. At the time of filing the Form N-400, MAMADJONOV listed an address of 243 Ridgefield Drive, Middletown, Connecticut, located within the District of Connecticut.

    C. On October 27, 2016, MAMADJONOV was interviewed by a USCIS Immigration Services Officer regarding his Form N-400, Application for Naturalization.

    D. MAMADJONOV attempted to procure his naturalization by knowing misrepresentation and concealment of material facts.

    E. MAMADJONOV knowingly misrepresented and concealed his association with a member of a known terrorist organization when he answered on, Part 11, Question 10 of the N-400, in the negative and certified, under penalty of perjury, his answers as true and correct.

F.   MAMADJONOV knowingly misrepresented and concealed giving any U.S. Government official(s) any information or documentation that was false, fraudulent, or misleading when he answered on Form N-400, Question 31 contained in Part 11 of the Application for Naturalization, in the negative and certified, under penalty of perjury, his answers as true and correct.

G.   MAMADJONOV knowingly misrepresented the purpose of his travel outside the United States in Part 8 of the N-400. At the October 27, 2016, he falsely told the USCIS Immigration Services Officer that the purpose of his trip to Turkey (which he listed on his N-400) was to visit his brother who operates a restaurant in Istanbul.

V.   *MAMADJONOV's Interviews with FBI and USCIS*

10.   On or about May 14, 2014, MAMADJONOV responded to an FBI request for an interview. MAMADJONOV provided that he traveled to Turkey in 2013 to meet with his brother Saidjon MAMADJONOV. MAMADJONOV traveled with over twenty thousand dollars in cash that he planned to offer to Saidjon in an effort to make amends. Ultimately, MAMADJONOV did not give Saidjon the money and claimed he returned to the United States with the currency.[1] At the time of the interview, MAMADJONOV had not spoken with Saidjon in approximately eight months and speculated Saidjon may have gone to Dubai to start a business. During this interview,

---

[1] Had MAMADJONOV brought $20,000 in currency into the United States, he would have been required to report this on a Report of International Transportation of Currency and Monetary Instruments (FinCEN105)..

MAMADJONOV knowingly answered questions as though Saidjon was still alive and intentionally omitted the fact that he was dead.

11. On or about May 29, 2014, MAMADJONOV responded to an FBI request for an interview and was accompanied by his lawyer. MAMADJONOV advised that Saidjon met with him in Istanbul during his trip to Turkey in late May of 2013. MAMADJANOV and his family stayed with Saidjon at an Uzbek taxi driver's house for over ten days during the trip to Istanbul. At the time of the interview, MAMADJONOV stated he did not know of Saidjon's location but believed him to be in either Turkey or Dubai. During this interview, MAMADJONOV knowingly answered questions as though Saidjon was still alive and intentionally omitted the fact that he was dead.

12. On or about November 18, 2014, MAMADJONOV responded to an FBI request for an interview. MAMADJONOV stated he planned to travel to Turkey in December of 2014 in an effort to locate Saidjon. MAMADJONOV stated that his last contact with Saidjon was during his trip to Turkey in 2013. MAMADJONOV believed Saidjon to have married a Turkish woman and living in Turkey. MAMADJONOV later stated that Saidjon had called him from a few different Turkish numbers shortly after his return from the 2013 trip to Turkey. During this interview, MAMADJONOV knowingly answered questions as though Saidjon was still alive and intentionally omitted the fact that he was dead.

13. On or about August 17, 2016, MAMADJONOV responded to an FBI request for an interview. MAMADJONOV stated that he did not know the whereabouts of Saidjon.

MAMADJONOV also stated that he had not overheard any discussions of Uzbeks in the United States going over to Syria to fight and was not aware of any Uzbeks travelling to Syria.

14.     On or about November 20, 2017, MAMADJONOV responded to an FBI request for an interview. MAMADJONOV apologized for purposely, lying to the FBI in previous interviews regarding the status of Saidjon. MAMADJONOV stated he knew Saidjon had died fighting in Syria with the "Nusra" group, which was affiliated with ISIS.[2] During MAMADJONOV's May of 2013 trip to Turkey, he was informed that Saidjon had died fighting in Syria. MAMADJONOV believed Saidjon was killed in May or June of 2013. MAMADJONOV received a FedEx package after he returned from Turkey in 2013 which contained what he believed to be Saidjon's iPhone. Contained on the phone were several videos and photographs depicting Saidjon in Syria. MAMADJONOV recalled a video in which Saidjon stated, "join us brother, we are here." MAMADJONOV understood this video to be Saidjon encouraging him to travel to Syria. MAMADJONOV also viewed photographs of Saidjon cleaning weapons in military dress while armed with a weapon. Furthermore, the phone contained a photograph of Saidjon's dead body and his bloodied face. MAMADJONOV believed he would be in trouble with the FBI and United States government had he disclosed the fact that Saidjon died while fighting in Syria.

---

[2] At the time of Saidjon's death in 2013, Al Nusrah Front and ISIS were affiliated and covered by the same foreign terrorist organization designation.

7

15. On October 27, 2016, MAMADJONOV was interviewed by a USCIS Immigration Services Officer regarding his Naturalization Application. MAMADJONOV was placed under oath and acknowledged under penalty of perjury that his statements and answers would be truthful. In response to Part 11, Question 10 of Form N-400, "Have you ever been a member of, or in any way associated (either directly or indirectly) with: C. A terrorist organization?" MAMADJONOV responded "No." MAMADJONOV knew this statement was false at the time he completed the N-400 because he admitted to the FBI during the November 20, 2017 interview that his brother Saidjon died in 2013, while fighting in Syria with the "Nusra" group. Additionally, during his October 27, 2016 interview, when asked to verify his response to Part 11, Question 10, MAMADJONOV stated that he was not a member of a terrorist organization but that he knew Alizjon [sic] Rahmatov [sic], who had been arrested on terrorism charges. MAMADJONOV explained that Rahmatov [sic] lived next door to him and that he would invite him to come and see his newborn baby.

16. An individual named Azizjon Rakhmatov was arrested on May 11, 2016, on charges of conspiracy to provide and attempting to provide material support to the designated terrorist organization ISIS. Azizjon Rakhmatov formerly lived in the same apartment complex as MAMADJONOV. Therefore, there is probable cause that MAMADJONOV was referring to Azizjon Rakhmatov during the interview on his N-400.

17. In response to Part 11, Question 31 of Form N-400, "Have you ever given any Government official information that was materially false, fraudulent or misleading?" MAMADJONOV responded "No" to that question. MAMADJONOV knew this statement was

false when he made it because at the time he completed his N-400, he had given materially false and a misleading statements to agents of the FBI about his brother Saidjon in at least three interviews, as detailed in ¶¶ 10-12 of this Affidavit. At the time he was interviewed on the N-400, on October 27, 2016, he had provided false and misleading statements to agents of the FBI about his brother Saidjon in another interview, as detailed in ¶13.

18. Sidikjon executed numerous documents with USCIS, which warned that it was illegal to make materially false and misleading statements to that government agency. For instance, SIDIKJON signed a USCIS Form G-325A, Biographic Information which he dated July 20, 2010, in connection with his application for permanent residency. It contained the following warning directly below the signature block: "Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact."

19. SIDIKJON's N-400 contained the following jurat: "I certify, under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct," and he signed below that statement and dated it September 8, 2014. Additionally, the N-400 Instructions read:

> If you knowingly and willfully falsify or conceal a material fact or submit a false document with this Form N-400, USCIS will deny any other immigration benefit. In addition, you may be subject to criminal prosecution and penalties provided by law.

At the conclusion of his interview on his N-400, on October 27, 2016, SIDIKJON swore an oath under penalty of perjury that his responses were true.

9

20. Moreover, SIDIKJON submitted a USCIS Form I-485, Application to Register Permanent Residence, which he dated July 20, 2010. It contains the following jurat just above the signature block:

> I certify under penalty of perjury of the United States that the information provided in this application is all true and correct.

In addition, in the space above the signature block in Part 5, the Form I-485 directed SIDIKJON to read the Penalties provision in the Instructions. The Penalties provision reads:

> If you knowingly and willfully falsify or conceal a material fact or submit a false document with your Form I-485, we will deny your Form I-485 and may deny any other immigration benefit. In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

21. The facts misrepresented by MAMADJONOV were material to determining his eligibility for naturalization because they had the natural tendency to influence the USCIS Immigrations Services Officer's (or Secretary of Homeland Security's) decision whether to grant him United States Citizenship. Had MAMADJONOV disclosed that he had indirect association with a terrorist organization subsequent to filing his Application for Naturalization, or that he had provided the other false and misleading information detailed in this Affidavit, the USCIS would have inquired further and would have discovered that MAMADJONOV, by operation of law, was not eligible for naturalization under section 316(a) of the INA, 8 U.S.C. Section 1427(a), which requires, among other things, that the applicant demonstrate good moral character.

22. Generally, unless there are extenuating circumstances, an applicant for naturalization is precluded from establishing good moral character if, during the relevant time period, he commits unlawful acts that adversely reflect upon his moral character. *See* 8 U.S.C.

Section 1101(f), 8 C.F.R. Sections 316.10(b)(2)(vi)(false testimony to obtain immigration benefit) and (b)(3)(iii)(committing unlawful acts that adversely reflect upon good moral character).

23. MAMADJONOV attempted to procure his naturalization contrary to law in violation of Title 18, United States Code, Section 1425, because he falsely swore to the accuracy of his N-400 on October 27, 2016, and falsely declared under penalty of perjury that his N-400 was accurate on September 8, 2014, each of which is a violation of Title 18, United States Code, Section 1015.

24. MAMADJONOV further knowingly swore a false oath, and knowingly made a false declaration under penalty of perjury, as to material matters on his N-400 regarding his indirect association with a terrorist organization, his false statement regarding the purpose of his travel to Turkey, and his false response to Part 11, Question 31, as outlined in this Affidavit. Had MAMADJONOV disclosed that his indirect association with a terrorist organization subsequent to filing his Application for Naturalization, the USCIS would have inquired further and would have discovered that MAMADJONOV, by operation of law, was not eligible for naturalization under section 316(a) of the INA, 8 U.S.C. Section 1427(a). The fact that MAMADJONOV provided false information on the N-400 and in his interview adversely reflects upon his moral character. Consequently, he was ineligible for naturalization and illegally attempted to procure his naturalization.

### VII. Conclusion

25. Based on the foregoing information, there is probable cause to believe, and I do believe, that SIDIKJON MAMADJONOV has committed a violation of Title 18, United States

Code, Section 1425, (Procurement of Naturalization Unlawfully) and Title 18, United States Code, Section 1015, (False Statements on a Naturalization Application); and Title 18, United States Code, Section 1546 (False Oaths and Declarations Under Penalty of Perjury) in order to obtain United States Citizenship unlawfully. Accordingly, I request the issuance of a complaint and warrant authorizing his arrest.

## REQUEST FOR SEALING

26. I further request that the Court order that all papers in support of this application, including the affidavit and criminal complaint, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
CHRISTOPHER EVANS
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and sworn to before me on December 21, 2017 at New Haven, CT.

/s/ Sarah A. L. Merriam, USMJ
_____
THE HONORABLE SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE