UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA :

v. : CRIM. NO. 3:18-CR-79 (SRU)

SIDIKJON MAMADJONOV : April 11, 2019

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), Defendant Sidikjon Mamadjonov submits the following memorandum of law in support his motion to suppress evidence obtained in violation of the Fifth, and Sixth Amendments to the United States Constitution. As discussed below, numerous heavily armed federal agents occupied Mr. Mamadjonov's home and questioned him for hours in his basement without ever informing him of his *Miranda* rights as is required when, as here, a reasonable person in Mr. Mamadjonov's position would not believe themselves free to leave the police-dominated atmosphere in which the interrogation occurred.

Mr. Mamadjonov requests that the Court schedule an evidentiary hearing on this motion to resolve factual matters relevant to disposition of this motion.

## **FACTUAL BACKGROUND**

On the morning of November 20, 2017, federal agents executed a federal search warrant at the home of Mr. Sidikjon Mamadjonov.[1] Mr. Mamadjonov's recollection of these events, which is as follows, forms the factual basis for this motion. Materials produced to date in discovery indicate that at no time on November 20, 2017, was Mr. Mamadjonov advised of his *Miranda* rights.

1. Early in the morning on November 20, 2017, I was home in bed with my wife who was pregnant. My mother and my three children were also home.

2. Federal agents broke open my front door. I rushed to the door and they told me to put my hands up. I was only wearing underwear. I asked to put clothes on, but the agents did not let me go to my bedroom. An agent brought clothes to me in the living room. My wife, mother, and children were also in the living room.

3. There were at least 20 agents. Some of them were carrying rifles that they pointed at me. Most of them were wearing bullet-proof vests. There was also at least one dog.

---

[1] Defendant has requested production of the affidavit in support of the search warrant application. Should the contents of the affidavit raise concerns about the validity of the search warrant, Defendant reserves the right to seek suppression of all items seized in connection with the search.

4. A person who I thought was the boss of the agents told me that if I did not talk to them bad things would happen. I believed that if I did not talk I would be taken to the police station.

5. Five or six agents took me to down to the basement of my house.

6. The basement was unfinished. The part of the basement I was in had no window.

7. I was surrounded by agents on all sides. I did not feel that I was free to leave the basement.

8. Agents questioned me for I believe between four and five hours. I was allowed to see my children and go to the bathroom 2-3 times during this time, always with agents present, including in the bathroom.

**Exhibit 1.**

<u>**ARGUMENT**</u>

**III.    Mr. Mamadjonov's Unmirandized Statements on November 20, 2017, Should be Suppressed.**

**A.    Applicable Law**

The Fifth Amendment to the United States Constitution protects an individual's right not to "be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V. The Supreme Court has explained that "[o]nly those interrogations that occur while a suspect is in police custody . . . 'heighte[n] the risk' that statements obtained are not the product of the suspect's free choice."  *J.D.B. v. North Carolina*, 564 U.S. 261, 268-69 (2011).  Whether a person is "in custody" is an "objective inquiry" that requires courts to consider "'first, . . . the circumstances surrounding the interrogation; and second, [whether] a reasonable person [would] have felt he or she was at liberty to terminate the interrogation and leave.'"  *Id*. at 270 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Where a person is subjected to custodial interrogation, the police are required, pursuant to *Miranda v. Arizona*, to warn him "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Id*. at 269 (quoting *Miranda*, 384 U.S. at 444 (1966)).  "And, if a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a 'prerequisit[e]' to the statement's admissibility as evidence in the Government's case in chief, that the defendant 'voluntarily, knowingly, and intelligently' waived his rights."  *Id*. at 269-70 (quoting *Miranda*, 384 U.S. at 444, *Dickerson v. United States*, 530 U.S. 428, 435 (2000)).  Otherwise, the statements must be excluded from evidence.

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). In the course of conducting a criminal investigation, police are entitled to approach a suspect or witness to ask him questions. *See Florida v. Royer*, 460 U.S. 491, 497 (1983); *Illinois v. Lidster*, 540 U.S. 419, 425 (2004). "[M]ere questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "[T]he appropriate inquiry," rather "is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id*. at 436. Thus, police may not "convey a message that compliance with their requests is required," *id*. at 435, or "by means of physical force or show of authority" restrain a person's liberty. *Terry*, 392 U.S. at 19 n.16.

A consensual encounter becomes a seizure when a reasonable person would no longer feel free "to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437. Relevant factors include "(1) 'the interrogation's duration'; (2) 'its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border)'; (3) 'whether the suspect volunteered for the interview'; (4) 'whether the officers used restraints'; (5) 'whether weapons were present and especially whether they were drawn'; and (6) 'whether officers told the suspect he was free to leave or under suspicion.'" *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (quoting *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011)).

"As a general matter, the detention of a witness that is indistinguishable from custodial interrogation requires no less probable cause than a traditional arrest." *Lincoln v. Barnes*, 855 F.3d 297, 304 (5th Cir. 2017). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169,

171 (2d Cir. 1990). Once a person is in custody, it is incumbent upon the police to *Mirandize* him. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

**B.      Mr. Mamadjonov Was Subjected to Unmirandized Custodial Interrogation.**

The police seized Mr. Mamadjonov's person without an arrest warrant when they questioned him for upwards of five hours in the basement of his home.  The *Faux* factors, on balance, support a finding that Mr. Mamadjonov was in custody during this time. Numerous, heavily armed agents (and at police dog) from multiple law enforcement agencies entered Mr. Mamadjonov's home in the early hours of the morning. They separated Mr. Mamadjonov from other members of his family, led him to believe he would be taken to a police station if he did not cooperate, and questioned him for hours in the basement of his home. An objectively reasonable person in Mr. Mamadjonov's position—having experienced what amounted to a militarized occupation of his home—would not have felt "free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436.  Through their actions and words, officers "convey[ed] a message that compliance with their requests [wa]s required." *Id.* at 435. Even if Mr. Mamadjonov's detention was somehow lawful at its inception (for example for the limited duration of the search warrant execution), the duration of the detention and ensuing interrogation transformed it into an unlawful detention. Under these circumstances, agents were required to take the simple prophylactic measure of ensuring Mr. Mamadjonov was aware of his critical constitutional rights. That they did not do so requires suppression.

**i.      The Interrogation Was Lengthy**

The length of Mr. Mamadjonov's hours-long interrogation in his basement, first, points towards custodial interrogation. While not dispositive, courts have found similar or even shorter periods of questioning to be indicative of a person's custodial status.  *See, e.g.*, *FNU LNU*, 653

F.3d at 155 (questioning that "lasted for 90 minutes" is "substantially longer than most interviews that we have deemed non-custodial in other [i.e., non-border] contexts"); *Tankleff v. Senkowski*, 135 F.3d 235, 244 (2d Cir. 1998) (suspect in custody where he was "subjected to increasingly hostile questioning at the police station" for two hours); *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013) (interrogation lasting roughly two hours is indicative of custody); *United States v. Bassignani*, 575 F.3d 879, 886 (9th Cir. 2009) (two-and-a-half hour interrogation is "lengthy" and "weighs in favor of finding that [a suspect] was in custody"); *United States v. Kim*, 292 F.3d 969, 977 (9th Cir. 2002) (fifty-minute questioning was "a full-fledged interrogation, not a brief inquiry").

### ii. The Interrogation Occurred in a Coercive, Police-Dominated Setting

Heavily armed agents interrogated Mr. Mamadjonov for hours in the basement of his home. The fact that he was questioned in his house and not a police station of course does not mean that he was not in custody for *Miranda* purposes. *See Orozco v. Texas*, 394 U.S. 324, 326–27 (1969) (questioning in person's bedroom custodial). The Fourth Circuit, addressing circumstances similar to those here, explains (and is worth quoting) at length application of this principle:

> Second, even to the extent that law enforcement told Hashime that he did not have to answer questions and was free to leave, that by itself does not make the interrogation non-custodial. Although a statement that the individual being interrogated is free to leave may be "highly probative of whether, in the totality of the circumstances, a reasonable person would have reason to believe he was 'in custody,' " such a statement "is not 'talismanic' or sufficient in and of itself to show a lack of custody." *United States v. Hargrove,* 625 F.3d 170, 180 (4th Cir.2010). The broader setting makes clear why a few isolated statements by law enforcement in the course of a three-hour interrogation cannot erase its custodial nature. Before the interrogation, Hashime had awoken at gunpoint to a harrowing scene: his house was occupied by a flood of armed officers who proceeded to evict him and his family and restrict their movements once let back inside. Throughout the interrogation, Hashime was isolated from his family members, with his mother's repeated requests to see him denied. It is little wonder that Hashime testified that, during

the interrogation, "I didn't think I had any chance to leave.... I felt that I was ... trapped and ... had to stay where I was and do what I was told." JA 64.

We also cannot accept the argument that the home setting here rendered the interrogation non-custodial. While courts are generally less likely to characterize as custodial interrogations in familiar settings like the home, *see* 2 Wayne R. LaFave et al., Criminal Procedure § 6.6(e), at 738–40 (3d ed.2007), the particular facts of Hashime's interrogation cut in the other direction. A suspect "may not feel that he can successfully terminate the interrogation if he knows that he cannot empty his home of his interrogators until they have completed their search." *United States v. Craighead,* 539 F.3d 1073, 1083 (9th Cir.2008). As Hashime testified during the suppression hearing, prior to being interrogated he did not feel that he could freely move through the house because the officers "had people everywhere and telling us what to do, telling me what to do, and telling me where not to go and where to go." JA 64.

This case is similar to *United States v. Colonna,* 511 F.3d 431 (4th Cir.2007), where we found that an interrogation arising out of a search of the home was custodial for *Miranda* purposes. In *Colonna,* twenty-four FBI agents executed a search warrant on the defendant's home, looking for child pornography. *Id.* at 433. Our analysis in that case focused on many of the same factors that guide our inquiry here: the large number of armed law-enforcement agents, the suspect's isolation during his interrogation, and the suspect and his family's loss of control over their home. *See id.* at 436. Several of our sister circuits have found interrogations to be custodial in similar circumstances. *See United States v. Cavazos,* 668 F.3d 190, 194 (5th Cir.2012); *Craighead,* 539 F.3d at 1089; *United States v. Mittel–Carey,* 493 F.3d 36, 39–40 (1st Cir.2007).

*United States v. Hashime*, 734 F.3d 278, 284 (4th Cir. 2013).

The circumstances described in *Hashime* and in the present case contrast importantly with those present in *Faux*, where, as the Court stressed, agents did not even draw their weapons. *Faux*, 828 F.3d at 138. The Court noted that "[t]his distinguishes our case from the 'police–dominated environment' that led to a custody finding by the Ninth Circuit in *Craighead*. There, the agents unholstered their weapons in the presence of the defendant several times. 539 F.3d at 1084–88. The interrogation took place in a "back storage room" where the door was closed

behind the defendant and one of the armed officers stood blocking the door, silently. *Id.*" *Id*. at 138 n.8.[2]

### iii.    Mr. Mamadjonov Did Not Volunteer for the Interrogation

Mr. Mamadjonov did not initiate contact with law enforcement.  Rather, he encountered them early in the morning as they barged into his home.  As the Eighth Circuit has explained, "when the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect, custody is more likely to exist." *United States v. Griffin*, 922 F.2d 1343, 1351 (8th Cir. 1990).

Moreover, even to the extent that Mr. Mamadjonov initially agreed  (again in the context of a police-dominated environment) to agents, even "[a] consensual encounter ripens into a detention or a seizure when, under the circumstances, a reasonable person would have believed that he was not free to leave."  *United States v. Peterson*, 100 F.3d 7, 10 (2d Cir. 1996) (citation

---

[2] Similarly in *United States v. Simmonds*, 641 F. App'x 99, 103 (2d Cir. 2016), the Court applied a comparable analysis to distinguish the facts of that case from circumstances in which clearly armed police create police-dominated atmosphere:

> In contrast to cases finding custody because of a "police-dominated atmosphere," Agent Destito was dressed in plain clothes, his weapon was holstered and concealed by his jacket, he was not positioned between Simmonds and the apartment's exit, no other officers were involved in the interview, and the tone of the interview was conversational in nature. *Cf. United States v. Cavazos,* 668 F.3d 190, 194 (5th Cir.2012) (finding an interrogation was custodial because, among other reasons, "more than a dozen officers entered and searched the [defendant's] home"); *United States v. Revels,* 510 F.3d 1269, 1275 (10th Cir.2007) (finding a reasonable person "would have perceived a police-dominated atmosphere" when "seven police officers abruptly roused [the defendant and her boyfriend] from their bedroom after forcibly entering their home").

and internal quotation marks omitted). *See also Tankleff*, 135 F.3d at 240 (although suspect "agreed" to go to "the police station" with homicide detectives, interview ripened into a custodial interrogation where "[f]or the last two hours, [the defendant] had been subjected to increasingly hostile questioning at the police station, during which the detectives had accused him of showing insufficient grief, had said that his story was 'ridiculous' and 'absurd,' and had added that they simply 'could not accept' his explanations").

### iv.     The Police Did Not Advise Mr. Mamadjonov of His *Miranda* Rights.

Mr. Mamadjonov was never advised, orally or in writing, of his *Miranda* rights during the November 20, 2017 interrogation. (Mr. Mamadjonov does not recall being informed of these rights and agents' notes do not indicate he was informed of his rights). When a suspect is in custody and agents fail to comply with *Miranda*, the remedy is clear:  "It is well settled that the Government may not use *any statements* obtained from a defendant, whether exculpatory or inculpatory, which were the product of custodial interrogation, unless prior to any questioning the defendant was advised of his constitutional rights and knowingly, intelligently and voluntarily waived such rights." *United States v. Williams*, No. 08-CR-6218 CJS, 2009 WL 1652169, at *6 (W.D.N.Y. June 10, 2009) (emphasis added).  Accordingly, Mr. Chambers' statement should be suppressed.

## IV.     Mr. Mamadjonov's statements on November 21, 2017, Should Be Suppressed.

The day after police interrogated Mr. Mamadjonov in his home, he appeared at the FBI office in New Haven for further questioning and a polygraph examination. At that time Mr. Mamadjonov was provided and signed a waiver of rights form and voluntary polygraph form.

The ordinary remedy for any violation of an accused's constitutional rights is suppression of both the "primary evidence obtained as a direct result of [the] illegal search or seizure" and

"evidence later discovered and found to be derivative of an illegality." *Segura v. United States*, 468 U.S. 796, 804 (1984). Here, Mr. Mamadjonov's follow-up statements to the FBI on November 21, 2017, came on the heels of his unlawful unmirandized interrogation in which he "let the cat out of the bag." The Supreme Court has rejected the proposition that "the psychological impact of voluntary disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." *Oregon v. Elstad*, 470 U.S. 298, 312 (1985). Defendant concedes that under the available record *Elstad* precludes suppression of the November 21, 2017, statements. Nevertheless, Defendant makes this claim to preserve potential argument to the Supreme Court that *Elstad* was wrongly decided.

**V.      Mr. Mamadjonov Is Entitled to an Evidentiary Hearing.**

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question," *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 165 (2d Cir.2008). Here, Defendant's moving papers set forth substantial facts in support of suppression. Moreover, because the question of whether the agents in this case created a sufficiently police-dominated environment to trigger custodial status may turn on factual questions regarding police conduct, demeanor, location, and other factual details, an evidentiary hearing will be helpful to the Court in assessing the nature of the factual circumstances.

## <u>CONCLUSION</u>

For the foregoing reasons, the defense respectfully requests the suppression of all illegally obtained evidence following an evidentiary hearing.

Respectfully submitted,

THE DEFENDANT,
Sidikjon Mamadjonov

OFFICE OF THE FEDERAL DEFENDER

Dated: April 11, 2019          /s/ James P. Maguire
                               James P. Maguire
                               Assistant Federal Defender
                               265 Church Street, Suite 702
                               New Haven, CT 06510
                               Phone: (203) 498-4200
                               Bar No.: ct29355
                               Email: James_Maguire@fd.org

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 11, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James Maguire
Assistant Federal Defender