## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SIDIKJON MAMADJONOV. | No. 3:18-cr-34 (VAB) |

### RULING AND ORDER ON MOTIONS IN LIMINE AND MOTION FOR BILL OF PARTICULARS

Sidikjon Mamadjonov ("Defendant") has been charged in a Second Superseding Indictment with making false statements to the Federal Bureau of Investigation and making a false statement in an immigration document. *See* Second Superseding Indictment, ECF No. 178 (Jan. 19, 2022) ("Second Superseding Indictment").

In advance of trial, the parties have filed a motion for bill of particular and various motions to preclude or limit certain types of evidence. *See* Defs Mot. for Bill of Particulars, ECF No. 137 (Dec. 16, 2022) ("Mot. for Bill of Particulars"); Defs.' Mot. in Lim. to Preclude 404(b) Evid., ECF No. 138 (Dec. 16, 2022) ("404(b) Mot."); Def's Mot. in Lim. to Exclude Lay Opinion Testimony, ECF No. 139 (Dec. 16, 2022) ("Lay Opinion Mot."); Def's Mot. in Lim. to Exclude Testimony of Matthew Levitt., ECF No. 140 (Dec. 16, 2022) ("Levitt Mot."); Def's Mot. in Lim. to Exclude Polygraph Evidence., ECF No. 141 (Dec. 16, 2022) ("Polygraph Mot."); Def's Mot. in Lim. to Exclude Indict., ECF No. 142 (Dec. 16, 2022) (" Mot. to Exclude Indict."); Def's Sealed Mot. in Lim. to Exclude Statements, ECF No. 147 (Jan. 03, 2023) (" Mot. to Exclude Statements").

For the foregoing reasons, Mr. Mamadjonov's motion *in limine* to exclude Rule 404(b) evidence, ECF No. 138, is **GRANTED**.

Mr. Mamadjonov's motion *in limine* to preclude lay opinion testimony from United States Citizenship and Immigration Services ("USCIS") Officer Garnet DaCosta, ECF No. 139, is **DENIED without prejudice**.

Mr. Mamadjonov's motion *in limine* to preclude testimony from Dr. Matthew Levitt, ECF No. 140, is **DENIED without prejudice to renewal.**

Mr. Mamadjonov's motion *in limine* to preclude introduction of polygraph results or reference to the polygraph examination, ECF No. 141, is **DENIED as moot.**

Mr. Mamadjonov's motion *in limine* to exclude copies of the indictment from being provided to the jury, ECF No. 142, is **DENIED as moot.**

Mr. Mamadjonov's sealed motion *in limine*, ECF No. 147, is **DENIED as moot.**

Mr. Mamadjonov's motions for a bill of particulars, ECF Nos. 137 and 185, are **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Given the significant length of this litigation, the Court assumes familiarity with the factual and procedural history of the case and includes only events relevant to the motions *in limine*. *See* Ruling on Mot. to Suppress., ECF No. 164 (Jan. 13, 2023) ("Mot. to Suppress Order").

On January 13, 2022, the Court issued a ruling denying Mr. Mamadjonov's motion to suppress. Mot. to Suppress Order.

On December 16, 2022, Mr. Mamadjonov filed a motion for bill of particulars. Mot. for Bill of Particulars.

On December 16, 2022, Mr. Mamadjonov filed a motion *in limine* to preclude the introduction of undisclosed Fed. R. Evid. 404(b) evidence. 404(b) Mot.

The same day, Mr. Mamadjonov filed a motion *in limine* to preclude the Government from obtaining lay opinions from USCIS Officer Garnet DaCosta at trial. Lay Opinion Mot.

The same day, Mr. Mamadjonov filed a motion *in limine* to preclude the proposed testimony of Dr. Matthew Levitt. Levitt Mot.

The same day, Mr. Mamadjonov filed a motion *in limine* to preclude introduction of polygraph results or reference to the polygraph examination. Polygraph Mot.

The same day, Mr. Mamadjonov filed a motion *in limine* to exclude copies of the indictment to be provided to the jury. Mot. to Exclude Indict.

On December 23, 2022, the Government filed an opposition to Mr. Mamadjonov's motion for bill of particulars and motions *in limine* relating to Rule 404(b) evidence, lay opinion testimony, Dr. Levitt's testimony, polygraph results, and the indictment. Gov't Mem. of Law re Def.'s Pretrial Mots., ECF No. 145 ("Gov't Opp'n").

On January 3, 2023, Mr. Mr. Mamadjonov filed a sealed motion *in limine* to exclude certain statements made by Mr. Mamadjonov. Mot. to Exclude Statements.

On January 4, 2023, the Government filed an opposition to Mr. Mamadjonov's sealed motion to exclude certain statements. Gov't Sealed Mem. in Opp'n., ECF No. 147 ("Gov't Sealed Opp'n").

On January 6, 2023, Mr. Mamadjonov filed a reply in support of his motions regarding Rule 404(b) evidence, lay opinion testimony, Dr. Levitt's testimony, polygraph results, and the indictment. Def.'s Reply to Gov't Mem. of Law re Def.'s Pretrial Mots., ECF No. 156 ("Def.'s Reply").

On January 19, 2023, the grand jury returned a Second Superseding Indictment. ECF No. 178.

On January 25, 2023, the Court held a status conference with the parties. Min. Entry, ECF No. 184.

On January 25, 2023, Mr. Mamadjonov also filed a renewed motion for bill of particulars. Renewed Mot. for a Bill of Particulars, ECF No. 185.

## II.     STANDARD OF REVIEW

### A.     Motions *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

### B.     Motion for Bill of Particulars

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars . . . before or within 14 days after arraignment or at a later time if the court permits." Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby

enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

## III.    DISCUSSION

### A.    Motions *in Limine*

Mr. Mamadjonov moves to prevent the Government from offering at trial the following evidence: undisclosed evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b); lay opinion testimony from USCIS Officer Garnet DaCosta; expert testimony from Dr. Matthew Levitt; polygraph results or reference to the polygraph examination. Mr. Mamadjonov also seeks to prevent copies of the indictment from being provided to the jury.

The Court will address each of these issues in turn.

### 1.    Undisclosed Rule 404(b) Evidence.

Mr. Mamadjonov notes that the Government has indicated it may offer "testimony concerning Jihadist videos and photographs that were viewed by the defendant, but not the videos and photographs themselves" and "MoneyGram records, which reflect payments by the defendant to individuals in Turkey." 404(b) Mot. at 1 (citations omitted). He seeks, "pursuant to this Court's Standing Order on Discovery and Federal Rule of Evidence 401, 403, and 404(b), to preclude the introduction of the above evidence and further to preclude introduction of any other undisclosed 404(b) evidence." *Id*.

Mr. Mamadjonov argues that "indictment does not allege that Mr. Mamadjonov engaged (or attempted to engage) in any terrorist activities," "[n]or does it claim that Mr. Mamadjonov in any way attempted to provide material support or financing to any terrorist organization." *Id*. at 2. Furthermore, Mr. Mamadjonov argues, "[t]he government has not identified any other material

that it believes falls within the scope of 404(b)," and, thus, it should be precluded from offering other undisclosed 404(b) material." *Id*. at 4.

The Government "acknowledges that its earlier notice under Rule 404(b) was inadequate" and argues that "[it] is now correcting its oversight, and Mamadjonov has not been prejudiced by the delay." Gov't's Opp'n at 30. The Government contends that "none of the proffered evidence is inadmissible under Rule 404(b), as it is intrinsic to proof of the charged offenses." *Id.*

Mr. Mamadjonov responds that "[m]uch of the government's argumentation with respect to the materials covered in Defendant's 404(b) motion rest on the incorrect legal proposition, . . . that Mr. Mamadjonov faces a sentencing enhancement that turns on the question of whether the government was conducting a terrorism-related investigation." Def.'s Reply at 15. Mr. Mamadjonov also contends that, even if the Government's legal argument were correct, "the materials it seeks to introduce still would not be relevant" because "whether Mr. Mamadjonov ever viewed images depicting jihad makes it no more or less likely that the government was conducting a terrorism investigation." *Id.* Moreover, Mr. Mamadjonov contends that "[he] is charged with making false statements" and "[t]he government needs to prove the crime it has charged with evidence of the actual crimes charged." *Id.*

The Court agrees.

Under Federal Rules of Criminal Procedure 404(b), evidence of a "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may, however, be offered for a permissible purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In determining whether such prior act evidence is admissible, courts must consider

6

whether (1) the evidence is offered for a permissible purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value substantially outweighs the danger of unfair prejudice; and (4) whether a limiting instruction is possible. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). "The Government bears the burden of demonstrating the admissibility of evidence under Rule 404(b)." *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000).

Moreover, under Rule 404(b)(3), the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3).

Here, the Second Superseding Indictment charges Mr. Mamadjonov with making false statements to the FBI and making false statements on immigration documents. Second Superseding Indictment. It does not allege that Mr. Mamadjonov engaged in any terrorist activities nor that he provided financing to a terrorist organization. While the Government alleges that Mr. Mamadjonov viewed "Jihadist videos and photographs" and that Mr. Mamadjonov made "payments . . . to individuals in Turkey," 404(b) Mot. at 1, this evidence alone has little, if any, bearing on whether Mr. Mamadjonov provided false statements to the FBI and USCIS as alleged within the Second Superseding Indictment. Thus, this proffered evidence does not align with the charges alleged in the Second Superseding Indictment. Moreover, the Court finds that the probative value of the evidence is "substantially outweighed by its potential for unfair prejudice." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("If the evidence is relevant, the district court must determine if its potential for unfair prejudice substantially outweighs its probative value."); *see also United States v. Wiley,* No. 3:21-cr-98 (JBA), __ F.

Supp. 3d __, 2022 WL 2656788, at *2 (D. Conn. July 8, 2022) (describing evidence as unduly prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence" (internal citations and quotation marks omitted)).

Accordingly, Mr. Mamadjonov's motion *in limine* to preclude the Government's introduction of undisclosed Fed. R. Evid. 404(b) evidence will be granted. This ruling, however, is without prejudice to renewal at the trial, if the Government lays a better foundation for the admission of this evidence.

### 2.    Lay Opinions From USCIS Officer Garnet DaCosta

Mr. Mamadjonov moves "to preclude the government from eliciting . . . lay opinions from Officer DaCosta at trial." Lay Opinion Mot. at 1. Mr. Mamadjonov argues that "DaCosta's apparent opinion that someone is 'associated' with an organization by virtue of their relative's alleged association is not helpful to the jury and thus inadmissible" under Rules 403 and 701 of the Federal Rules of Evidence. *Id.* In addition, Mr. Mamadjonov contends that DaCosta's opinion as to the meaning of the term "associated," "is unduly prejudicial in that it injects an essentially legal opinion, from a witness with the imprimatur of a government title, on a matter of ultimate fact for the jury." *Id.* at 2.

The Government argues that "[t]he motion should be denied, because Officer DaCosta may properly offer first-hand testimony about what actually happened during the interview, as well as testimony as to what she would have done differently had Mamadjonov told the truth." Gov't's Opp'n at 34. Moreover, the Government contends that "[it] does not intend to ask Officer DaCosta *in haec verba* whether any of the information provided by Mamadjonov was

'material.'" *Id.* at 35. Thus, the Government concludes, Officer DaCosta's testimony is admissible.

      The Court agrees.

      Under Federal Rule of Evidence 701, a lay witness may only offer an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As a result, law enforcement fact witnesses may not offer opinion testimony based on specialized knowledge. *See, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) ("[W]e have observed that . . . the 'not based on specialized knowledge' requirement requires that a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." (internal quotation marks omitted)).

      Here, the Government intends to use Officer DaCosta as a fact witness providing "first-hand testimony about what actually happened during the interview, as well as testimony as to what she would have done differently had Mamadjonov told the truth." Gov't's Opp'n at 34; *see also United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013) ("'[W]hat-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud").[1] Moreover, the Government concedes that "[it] does not intend to ask Officer *DaCosta in haec verba* whether any of the information provided by Mamadjonov was 'material.'" Gov't. Opp'n. at 35. Therefore, Officer DaCosta's testimony would only be utilized by the Government "to elicit testimony about the impact of fraud" which is admissible under *Cuti*. 720 F.3d at 459.

---

[1] Indeed, consistent with the materiality analysis set forth below with respect to Dr. Matthew Levitt, this testimony is quite proper.

Accordingly, Mr. Mamadjonov's motion *in limine* to preclude the government from eliciting lay opinions from Officer DaCosta will be denied.

### 3.      The Proposed Expert Testimony of Dr. Matthew Levitt

Mr. Mamadjonov moves to preclude the proposed testimony of Dr. Matthew Levitt, "a senior fellow and a program director at the Washington Institute for Near East Policy, a think tank associated with AIPAC." Levitt Mot. at 1.

Mr. Mamadjonov notes that "Dr. Levitt's report outlines his qualifications, including by citing to books he has written on topics including US foreign policy related to the Middle East, international negotiations, the Palestinian group Hamas, and the Lebanese organization Hezbollah," arguing that "[n]one of these books appears on its surface to reflect meaningful expertise on the Syrian civil war and its partisans." *Id.* at 2. Mr. Mamadjonov also contends that "[t]estimony about the broader context of the Syrian war and various factions in the war is thus not relevant to" the Government's allegations in this case and that "the jury will have no need of an expert to help them understand the straightforward questions of whether someone was dead or whether Mr. Mamadjonov falsely claimed otherwise." *Id.* at 3. According to Mr. Mamadjonov, "[t]he government therefore cannot show that, with respect to these issues, Dr. Levitt's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue as required for admission under Fed. R. Evid. 702(a)." *Id.* (internal quotations omitted).

The Government argues that "Dr. Levitt is expected to testify about the problem posed by foreign terrorist fighters who return to the homeland" and "[t]his testimony will be highly probative as to the materiality of Mamadjonov's false statements—that is, why it mattered to the FBI agents to determine the whereabouts of Mamadjonov's brother." Gov't Opp'n at 26 Moreover, the Government contends that "Dr. Levitt is also expected to testify about the

10

different entities that Mamadjonov's brother may have been affiliated with, and to testify that all of them were designated foreign terrorist organizations" and that "[t]his testimony is relevant to establishing that the alleged offenses involved international terrorism, since false statements about others fighting on behalf of an FTO are offenses involving international terrorism." *Id.* at 27.

Mr. Mamadjonov responds that "[m]ore concerning than Dr. Levitt's lack of specific expertise on the ground in Syria is the government's stated intent to present testimony entirely divorced from the facts on the ground." Def.'s Reply at 14. He also argues that Dr. Levitt's proposed testimony regarding "the different entities that Mamadjonov's brother may have been affiliated with," would be "wholly unhelpful to the jury without a factual foundation showing that Mr. Mamadjonov's brother actually fought for some particular entity." Def.'s Reply at 14. Moreover, Mr. Mamadjonov contends that the proposed testimony "is particularly concerning in light of the government's apparent desire to lump Mr. Mamadjonov's brother with ISIS, an inflammatory claim lacking factual foundation." *Id.* In addition, Mr. Mamadjonov argues that "Dr. Levitt's proposed testimony regarding terrorist attacks, particularly in Europe, is thus divorced from the specific facts of the case and, for obvious reasons, highly prejudicial" and that, "[t]o the extent the government needs to explain why specific FBI agents had reason to care about Mr. Mamadjonov's brother's whereabouts, those fact witnesses are better positioned to do so than Dr. Levitt." *Id.*

The Court disagrees for now, but the Court will require a proffer of Dr. Levitt's proposed testimony outside of the presence of the jury before resolving the issue of its admissibility.

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Based on his stated qualifications, and, given his admission as an expert in his field before, *see, e.g.*, *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005), Dr. Levitt appears to be qualified to testify as an expert. And Mr. Mamadjonov does not appear to raise a serious objection to his general qualifications. The issue instead is the admissibility of his expert opinions here.

On the threshold issue of relevance, Dr. Levitt's testimony would be admissible if it were fairly probative of evidence necessary for the Government to meet its burden on the materiality element of the Section 1001 charge against Mr. Mamadjonov. But its relevance on this basis is fairly doubtful.

Under Section 1001, "[a] false statement is material if it tends to or is capable of influencing the decision-making body to which it was addressed." *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006). The Second Circuit has recognized that a false statement "distracting government investigators attention" away from something also "may be considered material" under this standard. *Id.* ("Bacanovic's statement was capable of distracting government investigators' attention away from Faneuil if they believed that the only parties to the December 27th call were Stewart and Bacanovic, and in that regard it may be considered material."); *see also United States v. Adekanbi*, 675 F.3d 178, 183 (2d Cir. 2012) ("As a matter of common sense, providing a false identity to officials conducting a safety-valve proffer has *both* a natural tendency to influence and is capable of distracting those officials." (internal quotation marks omitted)).

The relevance of Dr. Levitt's proffered expert testimony thus is not clear if it is only intended to place in context the alleged materiality of Mr. Mamadjonov's alleged false statements. The Government witnesses who interviewed Mr. Mamadjonov and later determined that his statements were false seemingly could provide all of the testimony necessary for materiality purposes. *See United States v. Jabar*, 19 F.4th 66, 84 (2d Cir. 2021) ("We find no merit to the defendants' claim that their statements were not material because Agent Klimczak already knew the answers to his questions, and he testified that their responses would not have changed his investigation. The jury could reasonably conclude that Jabar's and Bower's explanation for whether they properly used the grant was 'capable of influencing' the investigation, which is all that was required."); *see also Kungys v. United States*, 485 U.S. 759, 772 (1988)("[T]he test of whether Kungys' concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service.").

Indeed, rather than state conclusively that Mr. Mamadjonov engaged in certain specific activity, which constitutes terrorism, Dr. Levitt instead only would "testify about the different entities that Mamadjonov's brother may have been affiliated with." Gov't's Opp'n at 27. The use of the term "may" suggests that Mr. Mamadjonov's brother may not have been affiliated with these allegedly terrorist organizations. Dr. Levitt's expected additional testimony, "that returning terrorist fighters were a genuine risk and successfully carried out attacks in other countries," *id.* at 28, only complicates matters. If Dr. Levitt cannot identify any specific activities engaged in by Mr. Mamadjonov's brother, and whether these specific activities were acts of terrorism, then his general knowledge of the threat posed by "returning terrorist fighters" is less relevant as to the materiality of Mr. Mamadjonov's alleged false statements.

Once stated, moreover, the prejudicial effect of such testimony by Dr. Levitt could not be easily undone in the minds of the jurors. Indeed, if the Court were to permit this testimony, and conclude at the conclusion of the Government's case that there is insufficient evidence to support a terrorism enhancement, *see* Fed. R. Crim. P. 29(a) (permitting the entering of "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" upon either the defendant's motion or the court's own initiative), the jury's repeated exposure to references about alleged activity of terrorism could require the declaration of a mistrial on any remaining underlying false statement charge. *Cf. United States v. Hamdy*, No. 05-CR-232S, 2006 WL 6623084, at *5 (W.D.N.Y. June 28, 2006) (declaring a mistrial when "[t]he disconnect between the false statement charges in the Second Superseding Indictment and the rather overt suggestion at trial that Defendant was being actively investigated for terrorism-related activity was simply too great to overcome").[2] In other words, Dr. Levitt's general opinions, in the absence of more case-specific information, are of limited relevance, and, even if relevant, cannot overcome their expected prejudicial effect, without much more.

Again, for now, the Court will reserve final judgment until it has had an opportunity to examine Dr. Levittt's expected testimony more closely outside of the presence of the jury.

Accordingly, for now, the motion for limine will be denied without prejudice to renewal following this proffer.

### 4.    Polygraph Results and/or Polygraph Examination

Mr. Mamadjonov moves to preclude the "introduction of polygraph results or reference to the polygraph examination on the grounds that this information is not relevant under [Federal

---

[2] Regardless of whether Dr. Levitt testifies, the issue of undue prejudice as to any underlying false statement charge will be affected by any terrorism-related evidence presented in this case, if there is no terrorism enhancement for the jury to consider at the end of the trial.

Rule of Evidence 401]," arguing that "whatever probative value it may have is far outweighed by its unduly prejudicial effect and its tendency to confuse and mislead the jury under Rule 403." Polygraph Mot. at 1.

The Government does "not oppose Mamadjonov's motion in limine to preclude reference to the polygraph examination." Gov't Opp'n at 1.

Accordingly, no ruling is necessary for this issue pertaining to evidence of polygraph results and/or polygraph examination, and Mr. Mamadjonov's motion will be denied as moot.

### 5.      Copies of Indictment

Mr. Mamadjonov moves *in limine* to exclude "copies of the indictment from being provided to the jury." Mot. to Exclude Indict. at 1.

The Government does not oppose Mamadjonov's motion in limine to exclude the indictment. Gov't's Opp'n at 1.

Accordingly, no ruling is necessary for this issue pertaining to exclude copies of the indictment, and this motion will be denied as moot.

### 6.      Sealed Motion to Exclude Certain Statements

Mr. Mamadjonov moves to exclude certain statements made by Mr. Mamadjonov. Mot. to Exclude Statements at 1.

The Government has indicated that it does not intend to utilize the challenged statements. *See* Gov't Sealed Opp'n at 1.

Accordingly, no ruling is necessary for this issue pertaining to proffer statements, and this motion will also be denied as moot.

**B.      Motion for a Bill of Particulars**

"A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks omitted). A bill of particulars is not necessary, however, "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Id.* "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars." *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

Mr. Mamadjonov request two categories of information in their motion for a bill of particulars: "(1) what act(s) of terrorism the government intends to prove in asserting that Mr. Mamadjonov's offense involved international terrorism, and (2) what 'terrorist organization' the government claims his brother was associated with." Mot. for Bill of Particulars at 1. Mr. Mamadjonov argue that "[u]nlike the original indictment, the superseding indictment does not allege that Mr. Mamadjonov's brother was affiliated with al Nusrah, a designated terrorist organization." *Id.* Moreover, Mr. Mamadjonov contends that "[t]he superseding indictment continues to allege . . . both that [his] 'offense involves international . . . terrorism,' triggering a heightened statutory maximum sentence under § 1001, and that Mr. Mamadjonov falsely disclaimed association with a terrorist organization." *Id.*

The Government emphasizes that the "Superseding Indictment identifies with specificity the false statements that are the subject of the charges against him" and that "information contained in the discovery provided by the government and in its filings already describes what

the government intends to prove at trial." Gov't's Opp'n at 15. Moreover, the Government contends that during the interview at Mr. Mamadjonov's residence, he "admitted that he lied to the FBI, having known that his brother died in Syria while fighting for 'Nusra,' *i.e.*, al-Nusra Front, which Mamadjonov acknowledged was affiliated with ISIS." *Id.* The Government also notes that "[t]he report of this interview has been provided in discovery." *Id.* The Government argues that "the connection between al-Nusrah Front and ISIS, and their designation as foreign terrorist organizations, was detailed in the report of Dr. Matthew Levitt." *Id.*

In his reply, Mr. Mamadjonov argues that the Government "offers no justification or explanation for the 11th hour amendment" noting that the Government instead "claims the charges are perfectly clear—even while describing them in shifting and obfuscatory terms." Def.'s Reply at 12. He argues that the Government's reference to "Mr. Mamadjonov's alleged statement while interrogated during the search of his house that 'his brother died in Syria fighting on behalf of "Nusra" *i.e.* al-Nusrah Front,'" is "unhelpful." *Id.*[3]

The Court disagrees.

"The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quoting 1 C. Wright, Federal Practice and Procedure § 129, at 434–35 (2d ed. 1982)). Here, the Second Superseding Indictment clearly specifies the allegations against Mr. Mamadjonov's making false statements and provides the dates and goes further to provide the locations where

---

[3] In his renewed motion for bill of particulars, Mr. Mamadjonov mainly relies on the arguments in the original motion. *See* Renewed Motion for Bill of Particulars at 1 ("For the reasons set forth in Defendant's original motion for a bill of particulars, his reply memorandum in support of that motion (ECF No. 156), and for the reasons stated at the January 25, 2023, oral argument, the Court should order the Government to provide a bill of particulars specifying (1) what specific 'terrorist activity' or activities under Section 2331 the government intends to prove were involved in the offenses charged in counts one to three, and (2) what 'terrorist organization' the government intends to prove Mr. Mamadjonov's brother was associated with as charged in count four.")

the statements were taken place and to whom the statements were made. *See* Second Superseding Indictment. In addition, the Second Superseding Indictment provided "a plain, concise, and definite" statement of the offenses charged. Fed. R. Crim. P. 7(c)(1); *see also Walsh*, 194 F.3d at 44 ("[W]e have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal quotation marks omitted)).

Moreover, Mr. Mamadjonov's request for information about the investigation has already been provided in discovery and can be found within the filings of the Government. *See, e.g.*, Gov't Trial Mem., ECF No. 196 (Feb. 8, 2023) (detailing the Government's list of witnesses and exhibits, as well as describing various evidence the Government seeks to admit regarding the terrorism enhancement issue); Resp. to Mot. to Suppress Statements, ECF No. 67 (May 23, 2019), at 1–3 (describing international terrorism investigation). Therefore, the Second Superseding Indictment is sufficient, and the Government has provided sufficient details within its discovery pertaining to its international terrorism investigation as requested by Mr. Mamadjonov.

Accordingly, the Court will deny Mr. Mamadjonov's motions for a bill of particulars.

## IV. CONCLUSION

For the foregoing reasons, Mr. Mamadjonov's motion *in limine* to exclude Rule 404(b) evidence, ECF No. 138, is **GRANTED**.

Mr. Mamadjonov's motion *in limine* to preclude lay opinion testimony from USCIS Officer Garnet DaCosta, ECF No. 139, is **DENIED without prejudice**.

Mr. Mamadjonov's motion *in limine* to preclude testimony from Dr. Matthew Levitt, ECF No. 140, is **DENIED without prejudiced to renewal.**

Mr. Mamadjonov's motion *in limine* to preclude introduction of polygraph results or reference to the polygraph examination, ECF No. 141, is **DENIED as moot.**

Mr. Mamadjonov's motion *in limine* to exclude copies of the indictment, ECF No. 142, is **DENIED as moot.**

Mr. Mamadjonov's sealed motion *in limine*, ECF No. 147, is **DENIED as moot.**

Mr. Mamadjonov's motions for a bill of particulars, ECF Nos. 137, 185, are **DENIED.**

SO ORDERED at Bridgeport, Connecticut, this 21st day of February, 2023.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge