UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>SIDIKJON MAMADJONOV,<br>*Defendant*. | No. 3:18-cr-34 (VAB) |

**RULING AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

On March 7, 2023, a jury convicted Sidikjon Mamadjonov ("Defendant") of three counts of making a materially false, fictitious, or fraudulent statement or representation to the Federal Bureau of Investigation ("FBI"), and one count of making a false statement in an immigration matter. *See* Jury Verdict, ECF No. 240. Mr. Mamadjonov has moved for a judgment of acquittal.

For the following reasons, Defendant's motion for judgment of acquittal is **DENIED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Court assumes the parties' familiarity with the factual and procedural background and therefore, the Court will only address the background issues relating to the pending motion. *See, e.g.*, Ruling on Motion to Suppress, ECF No. 164 (Jan. 13, 2023); Ruling and Order on Mots. in Limine and Mot. for Bill of Particulars, ECF No. 203 (Feb. 21, 2023).

Defendant provides the following background in his memo:

> [On] February, 27, 2023, jury selection began. Testimony began on March 1, 2023. After several days of testimony, the government rested on March 3. The defense made an oral motion under Rule 29 for entry of a judgment of acquittal, the government responded, and the Court reserved judgment on the matter. The case then went to the jury, and on March 7, 2023, the jury returned guilty verdicts on four counts:

1

> Count One: Making a false statement to the FBI, in violation of 18 U.S.C. § 1001(a)(2), on or about May 29, 2014.
>
> Count Two: Making a false statement to the FBI, in violation of 18 U.S.C. § 1001(a)(2), on or about November 18, 2015.
>
> Count Three: Making a false Statement to the FBI, in violation of 18 U.S.C. § 1001(a)(2), on or about August 17, 2016.
>
> Count Four: Making a false statement in an immigration matter, in violation of 18 U.S.C. § 1546(a), on or about October 27, 2016.
>
> The jury was also asked to decide if each statement in counts 1-3 "involve[] international or domestic terrorism." 18 U.S.C. § 1001(a)(3). They found in each case that the statements in question had not been proven to involve terrorism.

Mem. at 5. FBI Special Agent Ryan Singer testified during trial about his investigation into Mr. Mamadjonov and his brother, Saidjon Mamadjonov, regarding "potentially the violation of the material support statute for providing support to a designated terrorist organization." *Id*. at 6. Agent Singer provided the following testimony:

> Q. Now, Special Agent Singer, if the defendant, Sidikjon Mamadjonov, had told you the truth that Saidjon Mamadjonov was dead during these interviews in May and in November of 2014, are there things you would have done differently in your investigations?
>
> A. Yes.
>
> Q. Can you explain…?
>
> A. Eventually the case for Saidjon would be closed due to the fact that he was deceased. I'd say with respect to the general investigation, which would at this point more likely be just within New Haven's responsibility, there could be additional investigative leads pursued based upon the information of how that event came to pass.
>
> . . .
>
> Q. Now, we talked a little bit about the different direction the investigation would have gone. Are there any particular

> types of questions or areas of investigation that you would have wanted to pursue knowing that Saidjon Mamadjonov was dead at this point?
>
> A. Yes. We would want to know how Saidjon came to be in Syria, how he came to be involved in fighting there, who were the individuals whom he met both in Turkey and in Syria, how are people getting trained, how are people being armed. Just a lot of investigative follow up that we would do in a situation like that.
>
> Q. Would any communications or potential communications with Saidjon Mamadjonov provided insight on the threat from foreign fighters?
>
> A. Potentially.

*Id.* at 6–7 (citations to transcript omitted). United States Custom and Immigration Service Officer Garnet DaCosta provided the following testimony in relation to the statements underlying Count 4, in particular, whether the statement that Saidjon Mamadjonov was alive and running a restaurant in Turkey, and Sidikjon's statement that he had no connections with terrorism:

> Q. Would it have affected your interview and the evaluation that you were making if Mr. Mamadjonov told you that he had not met his brother in Turkey because his brother had died fighting in Syria?
>
> A. I would have asked more questions about his brother's activity fighting in Syria.
>
> Q: And why would you ask those additional questions?
>
> Because the purpose of the interview was that his security background check had not cleared, and if I was going to recommend him for citizenship I would have to have done a memorandum and I would have to have gathered more information before I could complete that memorandum.
>
> . . .

3

> Q. And why, as an immigration services officer, do you ask -- why do you ask applicants for naturalization about any kind of membership or association with a terrorist organization?
>
> A: For this specific section it goes towards the applicant's attachment to the Constitution, and in order to become a naturalized citizen you have to be able to show that you can be attached to the United States Constitution. So this part of the questioning is a part of that.
>
> . . .
>
> Q. So how would it have affected your interview of Mr. Mamadjonov and your evaluation of him if he had told you that his brother had died fighting for a terrorist organization shortly before he himself went to Turkey?
>
> A. I would have to have done the memorandum to send the file back to the fraud detection and national security unit, and I would have to have that unit vet – that's the term we use internally -- vet his case. After the vetting is completed, I could not have recommended him for citizenship.
>
> Q. Had he told you that information, do you think you would have asked additional questions?
>
> A. I would have asked additional questions.
>
> . . .
>
> Q. And what did Mr. Mamadjonov tell you about whether he had ever provided false, fraudulent, or misleading information to a government official?
>
> A. He said "no."
>
> Q. And how would it have affected your interview and your evaluation of Mr. Mamadjonov, if at all, had he told you that he had provided false information about his brother's whereabouts to the FBI?
>
> A. I would have conducted a sworn statement separate and apart from the N-400 and go through specific questions on that part of the questioning with Mr. Mamadjonov and the FBI.
>
> . . .

4

> Q. And if he said perhaps, you know, I went to Turkey and I stayed there for two weeks with my family, would you have written that down?
>
> A. I would have written it there.
>
> Q. Would that have significantly affected your decision-making?
>
> A. I'm not sure. Not at this point.

*Id*. at 7–9 (citations to transcript omitted).

On March 6, 2023, Mr. Mamadjonov orally moved for a judgement of acquittal under Fed. R. Crim. P. 29, and, on June 23, 2023, then filed a memorandum of law in support of this motion. *See* Def.'s Rule 29 Mot. for J. of Acquittal, ECF No. 263; Mem. of L. in Supp. of Rule 29 Mot. for J. of Acquittal, ECF No. 263-1 ("Mem.").

On July 24, 2023, the Government filed a memorandum in opposition to Defendant's motion. *See* Gov. Mem. of L. in Opp'n. to Def.'s Mot. for J. of Acquittal, ECF No. 264 ("Opp'n").

On July 31, 2023, the Defendant filed a reply to the Government's opposition. Reply to Gov. Resp. to Rule 29 Mot. for J. of Acquittal, ECF No. 266 ("Reply").

## II. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 29, the court "on the defendant's motion" or "on its own" must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. When reviewing a motion for judgment of acquittal, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (alteration and internal quotation marks omitted) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). A defendant challenging the sufficiency of the evidence thus "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). Under this standard, the court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (quoting *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005)). A court must "defer to the jury[ the] assessment of witness credibility and . . . resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000). In sum, "[t]he government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez*, 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), and where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter," *Guadagna*, 183 F.3d at 129 (alteration in original) (internal citation and quotation marks omitted).

At the same time, the Court is also mindful of its responsibility to protect Defendants' Fifth Amendment rights. *See, e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If

courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine . . . whether a jury could *reasonably* find guilt beyond a reasonable doubt." *Id.* at 515 (alteration in original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014)). In particular, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).

### III. DISCUSSION

#### A. Materiality

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?" The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality (quoted above) to these historical facts.

*United States v. Gaudin*, 515 U.S. 506, 512 (1995). "Courts have 'broadly construed' materiality *United States v. Regan*, 103 F.3d 1072, 1084 (2d Cir. 1997) (citing *United States v. Gribben*, 984 F.2d 47, 51 (1993). "A finding of materiality does not require proof of 'actual reliance.'" *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) (citing *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013)). "Rather, 'the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end.'" *United States v. Brettschneider*, 832 F. Appx. 14, 16 (2d Cir. 2020) (citing *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998)).

Mr. Mamadjonov argues that no rational juror could find that his statements regarding whether he said his brother, Saidjon, was alive or dead were material because they were not capable of influencing the FBI. Mem. 6. Put simply, he argues that the FBI already knew his

7

brother was dead, and it did not matter whether Mr. Mamadjonov was lying about where he was. *Id*. at 12 ("The government was not distracted by [Defendant's] statements that Saidjon had been alive in 2013, operating a restaurant in Turkey, because they knew Saidjon was dead. Nevertheless, the government continued to pursue their inquiries doggedly – not for the purpose of making a decision about the investigation into Saidjon, but now for the purpose of charging Mr. Mamadjonov with making false statements.").

In response, the Government argues that the contention that Defendant's lies were not material because the FBI knew his brother Saidjon was dead is wrong as a matter of fact and insufficient as a matter of law. Opp'n. at 1. As a matter of fact, the Government argues that the FBI did not know of Saidjon's death when Defendant's interviews in which he lied took place. *Id.* As a matter of law, a lie can be material even if investigators already know the truth. *Id.* (citing *United States v. Jabar*, 19 F.4th 66, 84 (2021)).

In reply, Defendant argues that the Government did, in fact, know that Saidjon was already dead when the Defendant made the false statement, and that the evidence at trial did not establish that those false statements "influenced, or could have influenced, or could have tended to influence" the Government's investigations. Reply at 1.

The Court disagrees.

When a court considers a motion for acquittal under Rule 29, the "jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 335 F.3d at 180. Here, the Court instructed the jury:

> In order to sustain its burden of proof for the crime of making a false statement to the Federal Bureau of Investigation as charged in Counts One, Two, and Three, the Government must prove the following essential elements beyond a reasonable doubt:
>
> First: that Mr. Mamadjonov made a statement;

8

> Second: that this statement was material;
>
> Third: that the statement was false, fictitious, or fraudulent;
>
> Fourth: that in making the false, fictitious, or fraudulent statement, Mr. Mamadjonov acted knowingly and willfully; and
>
> Fifth: that the statement was made in a matter within the jurisdiction of the government of the United States

Post-Trial Jury Instructions, ECF No. 233 (March 5, 2023).

As to the second element, materiality, the Court gave the following jury instructions:

> The second element that the Government must prove beyond a reasonable doubt is that Mr. Mamadjonov's statement or representation was material.
>
> A statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decision-making body to which it was addressed, or if it is capable of distracting Government investigators' attention away from a critical matter. However, proof of actual reliance on the statement by the Government is not required.
>
> In deciding whether a statement is material, you should consider "what statement was made?" and "what decision was the agency trying to make?"

*Id.* at 30.

"A statement is material under § 1001 'if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter,'" *Jabar*, 19 F.4th at 84 (quoting *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012)). Mr. Mamadjonov's answers to the FBI thus could be "material" even if the FBI already knew the answers to the questions asked of him, and his responses to their questions would not have changed their investigation. *Jabar*, 19 F.4th at 84 ("We find no merit to the defendants' claim

9

that their statements were not material because Agent Klimczak already knew the answers to his questions, and he testified that their responses would not have changed his investigation."). Instead, as long as the "jury could reasonably conclude that [the defendant]'s explanation . . . was 'capable of influencing' the investigation, is all that [is] required." *Id.* (citing *Adekanbi*, 675 F.3d at 182). Based on this record, and viewing the evidence in the light most favorable to the Government—as this Court must—the jury in this case could have reasonably so concluded that here. *See Adekanbi*, 675 F.3d at 183 ("Thus, viewing the evidence in the light most favorable to the government – as we are required to do – the jury's funding of materiality was eminently reasonable.' (citations omitted)).

Furthermore, proof of actual reliance on the statements by the Government was not required. *Cf. Vilar*, 729 F.3d at 89 ("[T]he long-established law of our Circuit, and nearly every other circuit, is that [the government] need only prove [ ] materiality, meaning a substantial likelihood that a reasonable investor would find the omission or misrepresentation important in making an investment decision, and not actual reliance.").

Accordingly, Mr. Mamadjonov's motion for judgment of acquittal will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Mamadjonov's motion for judgment of acquittal.

**SO ORDERED** at New Haven, Connecticut, this 5th day of April, 2024.

                                            /s/ Victor A. Bolden
                                            Victor A. Bolden
                                            United States District Judge